# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

IN RE:
DAVID EUGENE CALDWELL
RITA KATHERINE CALDWELL

CASE NO. 2: 06-00484
CHAPTER 11
JUDGE MARIAN F. HARRISON

## MEMORANDUM

This matter is before the court on Ford Motor Credit's ("FMCC") Objection to Confirmation of the debtors' proposed chapter 11 plan, and Motion to Dismiss or Convert the debtors' case to chapter 7. Specifically, FMCC submits that the plan is not proposed in good faith and that the plan is not feasible pursuant to 11 U.S.C. § 1129. An evidentiary hearing was held on Thursday, April 26, 2007, and the court took the matter under advisement. For the reasons cited herein, the court DENIES confirmation of the plan, and orders that the case be converted to chapter 7.

Debtors filed this Chapter 11 Bankruptcy proceeding on February 3, 2006. Debtor, David Eugene Caldwell, Sr., is the President of Value Motor Company, Inc., (hereinafter "VMC") a used automobile sales, servicing, and financing business. He has been in the automobile business in one role or another for 45 years. Debtor, Rita Katherine Caldwell, is disabled due to congestive heart failure and diabetes. Her only income is social security. Mr. Caldwell testified that they filed bankruptcy when an automobile dealership business that he and his wife had signed a guarantee failed and the debtors lost their hospitalization insurance.

The debtors current assets ,as outlined in their disclosure statement, are as follows:

Debtors' current assets:

| | | |
|---|---|---|
| (1) | Cash on hand and in bank (Approximate) | 3,000.00 |
| (2) | UCEMC electric deposits on 3 accounts | 750.00 |
| (3) | Household goods, furniture, appliances, etc. | 1,540.00 |
| (4) | Clothing (estimated) | 500.00 |
| (5) | Jewelry | 810.00 |
| (6) | Golf clubs and tools | 140.00 |
| (7) | David Eugene Caldwell, Sr. – IRA | 2,230.00 |
| (8) | Two shares of Value Motor Company, Inc. Common stock | (no market value) |
| (9) | Loan receivable from Value Motor Company, Inc. with a face amount of $321,268 | 154,469 (See discussion in Article II below) |
| (10) | Rita Caldwell claim for social security disability benefits Exempt | |
| (11) | Real Estate | |
| | A. House and 4 acres, 1074 Old Cavalry Road, Cookeville TN 35801 and 8.2 acre tract adjacent to residence at 1074 Old Cavalry Road, Cookeville TN 38501 | 340,000.00 |
| | Less secured claims | <340,000.00> |
| | Net Equity | -0- |
| | B. House and lot at 412 W. Main St., Jamestown TN 38556 | 40,000.00 |
| | Less secured claim | <1,200,000.00> |
| | Net Equity | -0- |

Total Net Value of Assets     163,439.00
  Less Exemptions –
  Personal Property, T.C.A. 26-2-103 < 8,000.00>
  IRA Exemption, T.C.A. 26-2-105(a) < 2,230.00>
  Clothing, T.C.A. 26-3-104 < 500.00>

***NET VALUE OF NON-EXEMPT ASSETS     152,709.00***

The debtors liabilities, as presented in their disclosure statement and as testified to at trial consist of:

Summary of Liabilities and Claims against the Estate:

(1) Dale Bohannon, Debtors' attorney's fees
    (Estimated to be minimum of $10,000 at confirmation)     10,000.00
(2) U. S. Trustee's fees
(3) Post-petition medical expense Claims:
    (A) Cookeville Regional Hospital     1,932.00

|   |   |
|---|---|
| (B) Dr. Tanedo | 1,922.00 |
| (C) Buckeye Respiratory | 5,010.00 |
| (D) Dr. Hamp Morrison, Jr. | 397.00 |
| (4) Ocwen Loan Servicing (per claim filed) | 123,267.86 |
| (5) First Community Bank (per claim filed) | 309,004.73 |
| (6) Ford Motor Credit (per claim filed) | 327,382.36 |
| (7) Property Taxes | 12,117.97 |
| (8) Other unsecured claims without priority | 36,661.00 |
| (9) Claim of Dr. James Smith Pension Trust | 1,135,000.00 (Approx.) |
| ***Total Liabilities*** | ***1,962,704.00*** |

Mr. Caldwell testified that the only income he and his wife receive is Social Security Disability benefits and rental payments on property they own in Jamestown, Tennessee. Debtors' total social security income is $2,239.00, and they receive approximately $400.00 monthly rental from the Jamestown property. The debtors' monthly operating reports from February 2006 through February 2007 show net cash profit of at most $375 for any given month.[1]

Generally, the debtors' propose to finance their plan by their social security income and payments Mr. Caldwell says he is entitled to receive from VMC. The Debtors own two shares (16-2/3 % interest) of the common stock of VMC. The debtors' son, David Eugene Caldwell, Jr., owns the other 83-1/3% of the common stock. Mr.

---

[1]The monthly operating reports show the following net profit during the case:

| | |
|---|---|
| February, 2006 | 65 cents |
| March, 2006 | No report filed |
| April, 2006 | $13.24 |
| May, 2006 | $62.79 |
| June, 2006 | $321.00 |
| July, 2006 | $599.67 |
| August, 2006 | ($256.77) |
| September, 2006 | $0 |
| October, 2006 | $0 |
| November, 2006 | ($27.00) |
| December, 2006 | $91.00 |
| January, 2007 | $240.00 |
| February, 2007 | $375 |

3-U.S. Bankruptcy Court, M.D. Tenn.

Eugene Caldwell, Sr. has a loan receivable from VMC with a face amount of $321,268.00. The majority stockholder, David Eugene Caldwell, Jr., testified that he supports the debtors' proposal to fund the plan with payments made from VMC. to Mr. Caldwell. Mr. Caldwell admitted, however, that there is no written acknowledgment of VMC's payments to the debtors.

In large part, therefore, the success of the debtors' plan depends upon VMC's financial wherewithal to pay Mr. Caldwell.[2] According to the debtors' Disclosure Statement and testimony at the hearing, the assets and liabilities of VMC are as follows:

The assets of Value Motor Company, Inc. ("VMC") have the following approximate values:

| | |
|---|---|
| Used Car Inventory | $358,000.00 (at liquidation, wholesale cost is $500,000) |
| Notes Receivable | 529,000.00 (collectible estimate – face value is $723,000) |
| Equipment, Furniture, Fixtures | 70,000.00 (liquidation value may be $70,000) |
| Due from Cornerstone Auto Receivables LLC Over 18 months | 134,000.00 |
| Salvage Cars | 40,000.00 |
| ***Total*** | ***$1,131,000.00*** |

VMC has the following major liabilities (in approximate amounts):

| | |
|---|---|
| Attorney Fee owed (approx.) | 9,000.00 |
| James L. Smith Pension Plan Trust | 1,135,000.00 (secured by all assets) |
| Margaret Preston | 18,000.00 |
| Ford Motor Company | -0- |
| Accounts Payable | 15,000.00 |
| Charles A. Leach | 50,000.00 |
| Tennessee Department of Revenue | 78,694.00 plus penalties since July 31, 2006,(Judgment of 74,918 plus 10% interest plus a contingent claim of $83,346 to 2-1-07 of 3776) plus penalty and interest. (The Department has appealed an adverse ruling in the Chancery Court for Putnam County, TN setting aside a sales and use tax assessment of $83,346.00.) Orion Earle judgment (including interest to 2-1-07) 22,707.00 |

---

[2] Given the debtors' position as only minority shareholders in VMC, the plan seems tenuous at the outset.

| | |
|---|---|
| Total Liabilities to non-shareholders | 1,328,401.00 |

Liabilities owed to Shareholders:
| | |
|---|---|
| Debtor David Eugene Caldwell, Sr. | 321,268.00 |
| David Eugene Caldwell, Jr. | 613,205.00 |
| ***TOTAL LIABILITIES*** | ***2,262,874.00*** |

Mr. Caldwell admitted on cross examination that VMC's liabilities did, in fact, exceed its' assets. Mr. Caldwell contends, however, that based upon agreements VMC has reached with Cornerstone Financial concerning the sale of some of VMC's "charged off" loans, and the factoring of VMC's accounts receivable, and VMC's arrangements with the James L. Smith Pension Trust, that their plan is feasible.

The debtors propose to make the first plan payments with the $25,000 lump sum that VMC received from the sale of certain "charged off" receivables to Cornerstone Financial[3] under a "Receivables Purchase Agreement." Under this agreement, VMC received a $25,000.00 lump sum payment for the sale of 455 charged off loans of the dealership.[4]

Debtors also rely upon the "Auto Loans Warehousing Master Receivables Purchase and Security Agreement" between VMC and Cornerstone to assert that VMC can continue to repay Mr. Caldwell so that he, in turn, can fund the proposed plan. Under that Agreement:

---

[3] The debtors' Disclosure Statement provides:

Debtor David Eugene Caldwell, Sr. expects to receive approximately $20,000.00 from Value Motor Company, Inc. which Debtors will use to fund the payments due on the effective date of the Plan.

Debtors' Amended Disclosure Statement of March 19, 2007 p. 6.

[4] The Purchase Agreement provides that Cornerstone will pay a lump sum of $25,000 for the purchase of 455 loan with principal balances of $1,401,475. In addition, VMC is entitled to 33% of related collections made by Cornerstone within 24 months after Cornerstone has collected at least $140,000.00.

5-U.S. Bankruptcy Court, M.D. Tenn.

> This Purchase Agreement is not an offer or commitment for funding, nor is it a promise by Cornerstone to purchase any Receivables from Seller, nor is it a commitment on the part of the Seller to sell loans to Cornerstone. Transactions which may occur subject to the terms of this Purchase Agreement will be evaluated by bot Seller and Cornerstone on a loan by loan basis. Both Seller and Cornerstone have the right to decline to sell or to purchase any Receivable originated by the former, or offered to the latter, as its sole discretion, and without penalty.
>
> . . .
>
> 7. RECOURSE
> a. It is understood that some of the Receivables which Cornerstone purchases from Seller will default. In return for the right to buyback these receivables subject to terms and conditions to be defined elsewhere in this purchase agreement, the Seller agrees to protect Cornerstone's investment and interests by repurchasing the loans which default.
>
> b. Whenever a vehicle is repossessed, or whenever a receivable becomes more than 14 days delinquent for any reason, even if the vehicle has not been repossessed, the Debtor's receivable is said to be in default, and the Seller agrees to take one of the following two actions within five business days:
>
>> (I) Repurchase the defaulted receivable by paying Cornerstone the "Repurchase Price" defined in this Purchase Agreement
>>
>> (ii) Replace the defaulted receivable with a performing receivable having at least the same principal balance and which is otherwise acceptable to Cornerstone.

Mr. Caldwell admitted during his testimony that this is a factoring arrangement, and the money advanced to VMC is in the nature of a loan, which must be repaid as VMC collects on the assigned accounts receivable. Specifically, VMC is assigning a portion of its income to Cornerstone in exchange for the immediate infusion of cash for VMC. The factoring arrangement with Cornerstone does not require factoring by VMC of any receivable, but at the same time does not require Cornerstone to factor any purchase it does not wish to factor.

Finally, the debtors' plan relies upon the cooperation of the Dr. Smith Pension Trust. The debtors' Disclosure Statement describes VMC's relationship with the Trust as follows:

> The note to the James L. Smith Pension Plan Trust (the "Smith Note"), is secured by all of the assets of Value Motor Company, Inc. The payment of that note in full will entitle Value Motor Company, Inc. to obtain a deed from the Smith Pension Plan Trust for the real property on which Value Motor Company, Inc. is operated. On September 25, 2003, the real estate was sold by Value Motor Company, Inc. and David Eugene Caldwell, Sr., to the Smith Pension Plan Trust. The Trust had advanced a total of $1,218,507.65, the amount of the note, to pay off first and second mortgages and other liens and indebtedness owed by Value Motor Company, Inc., David Eugene Caldwell, Sr. and Charles Leach. Value and the Smith Pension Plan Trust entered into a Lease which provided for an Option to Purchase the real estate upon payment of the unpaid balance of the promissory note provided Value Motor Company, Inc. was not in default.
>
> The note to the Smith Pension Plan Trust is in arrears approximately $132,000. The Trust has allowed Value Motor Company, Inc. to maintain possession of the premises and continue to make payments son the debt. Value Motor Company, Inc. expects to pay the arrears on the note in full within the next few weeks from the proceeds from the sale of some of its receivable to Cornerstone Automobile Finance Company, LLC.

The trust has a lien on all receivables of VMC. According to Mr. Caldwell's testimony and the ballot filed by the Trust, there is full support for the debtors' plan. However, by Mr. Caldwell's own testimony, the Trust has a lien on all the receivables of VMC, owns the property from which VMC now leases to operate the business, and the Trust would have to agree to VMC's submission of payments to Mr. Caldwell as a minority shareholder in VMC.

In 2003 and in order to continue its business operations, VMC deeded its real estate to the trust with the option to repurchase the land if VMC became current on its obligations to the Trust. Mr. Caldwell admitted, however, that VMC has been in default on the loan to the Trust since 2003, and is still not current today. Nevertheless, the Caldwells contend that the agreements with Cornerstone and the Trust will allow VMC to become current, and therefore capable of repaying Mr. Caldwell so he could fund his plan.

FMCC argues that this parade of "what ifs" is too speculative to base a plan of reorganization around. FMCC contends that based upon all of the conjecture of what may or may not occur with the factoring agreement with Cornerstone and the Trust, the debtors' plan is not feasible and not proposed in good faith.

### *Feasibility*

Section 1129(a)(11), commonly referred to as the feasibility requirement, allows a court to confirm a Chapter 11 case only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). ***In re Mallard Pond Ltd.*** 217 B.R. 782, 785 (Bankr. M.D.Tenn., 1997).

This court discussed feasability in its ***In re American HomePatient, Inc.***, 298 B.R. 152, 162 (Bankr. M.D. Tenn. 2003) decision:

> In ***In re Mallard Pond***, 217 B.R. 782 (Bankr.M.D.Tenn.1997) the Court set forth several factors to consider in determining feasibility:
>
> > The test for feasibility entails an examination of several factors: (1) the adequacy of the [debtor's] capital structure; (2) the earning power of the [debtor's] business; (3) economic conditions [that the debtor will face during the plan period]; (4) the ability of [the debtor's present] management; (5) the probability of the continuation of the same management; and (6) any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan.
>
> 217 B.R. at 785 (***quoting Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co., Inc. (In re U.S. Truck Co., Inc.)***, 800 F.2d at 589 (6th Cir.1986))***. See also In re Rack Eng'g Co.***, 200 B.R. 302, 305 (Bankr.W.D.Pa. 1996). As plan proponent, the debtor must prove the feasibility of the plan by a preponderance of the evidence. ***Danny Thomas Prop. II Ltd. P'ship v. Beal Bank, S.S.B. (In re Danny Thomas Prop. II Ltd. P'ship)***, 241 F.3d 959, 963 (8th Cir.2001); ***Financial Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship ( In re T-H New Orleans Ltd. P'ship)***, 116 F.3d 790, 801 (5th Cir.1997).

> The proponent of a plan of reorganization does not need to guarantee success, "but a court cannot confirm a visionary scheme that promises creditors more than the debtor can possibly attain after confirmation, 'notwithstanding the proponent's sincerity, honesty and willingness to make a best efforts attempt to perform according to the terms of the plan.' " **In re Mallard Pond**, 217 B.R. 782, 785 (quoting In re Rack Eng'g Co., 200 B.R. 302, 305); **In re Ridgewood Apartments of DeKalb County, Ltd.**, 183 B.R. 784, 789 (Bankr. S.D.Ohio 1995) (does not require proof that meeting economic projections is certain, but financial projections must be based on realistic and reasonable assumptions capable of being met); **In re IPC Atlanta Ltd. P'ship**, 142 B.R. 547, 559-60 (Bankr.N.D.Ga.1992) (Code does not require guarantee of successful reorganization, but the plan must offer a reasonable prospect of success); **In re Lakeside Global II, Ltd.,** 116 B.R. 499, 507-8 (Bankr. S.D.Tex.1989) ("when financial realities do not support the projections or where the proponents' projections are unreasonable, the plan should not be confirmed").

**In re American HomePatient, Inc**. 298 B.R. at 169. Even under a most liberal view of the feasability factors, the debtors' plan simply cannot withstand scrutiny.

In this case, without the VMC payments to Mr. Caldwell, the debtors have only their social security income to fund the plan.[5] That income alone is not enough and, the success of the debtors' in this case depends wholly upon the adequacy of VMC's capital structure, VMC's earning power, and the economic conditions that VMC will face during the plan period. VMC is a non-debtor entity, yet all of the proof in this case depends upon this non-debtor's financial strength, and promise that this non-debtor can and will fund the debtors' plan.

The debtors are unable to show by a preponderance of the evidence, despite their best intentions, that their plan is feasible. Their reorganization plan resembles more of a visionary scheme than a likely successful reorganization. VMC's balance sheets shows it is insolvent. Although there are some prospects for VMC to regain its real estate and

---

[5] The debtors' plan contemplates surrender of the Jamestown property to the Trust thereby depriving the debtors of the additional $400 in rental income.

9-U.S. Bankruptcy Court, M.D. Tenn.

to show an adequate positive cash flow, it has not done so during the entire life of this case. It is not a reasonable request to ask creditors to invest in a reorganization plan that includes financial projections that are based wholly on speculation, and a plan that expects a complete reversal of the entire history of this debtor.

It is likewise unreasonable to rely on the Caldwell's minority ownership in VMC to cause VMC to make regular payments to them. Despite their son's support of the plan, there is no reasonable assurance that VMC can or will make the necessary payments to Mr. Caldwell to enable him to adequately fund the plan as proposed.

Despite finding that Mr. Caldwell a credible witness, the court cannot find that the debtors' showed by a preponderance of the evidence that their plan is feasible. Accordingly, the court must sustain FMCC's objection to confirmation based upon the debtor's inability to demonstrate that the plan complies with 11 U.S.C. § 1129(a)(11).[6]

### *Good Faith*

FMCC likewise objected to confirmation arguing that the debtors' plan was not proposed in good faith as required by 11 U.S.C. § 1129(a)(3). As this court has already denied confirmation based upon FMCC's feasability objection, the court finds it unnecessary to rule upon this objection.[7]

### *Conversion or Dismissal*

---

[6]The court took under advisement an evidentiary ruling on the admissibility of Dr. Smith's deposition. There is no need to rule on the admissibility given the creditor's successful objection to confirmation without reliance upon Dr. Smith's deposition.

[7]If for any reason, however, this case was to be considered upon appeal, the court notes that it found no bad faith in the plan proposed by these debtors. The court found their efforts to reorganize, while sincere, lacking in sufficient financial stability to support their proposed plan.

10-U.S. Bankruptcy Court, M.D. Tenn.

In addition to its objection to confirmation, FMCC filed a motion to dismiss or convert this case based upon the same reasons it was objecting to confirmation. Section 1112 governs conversion and dismissal of chapter 11 cases and provides in relevant part:

> after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including-
>
> > (1) continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> >
> > (2) inability to effectuate a plan;
> >
> > (3) unreasonable delay by the debtor that is prejudicial to creditors[.]

A debtor's inability to effectuate a plan in and of itself constitutes "cause" under § 1112(b)(2). An inability to effectuate a plan "means that the debtor lacks the ability to formulate a plan or to carry one out." **Hall v. Vance**, 887 F.2d 1041, 1044 (9th Cir.1989). The **Hall** court stated that:

> [d]ismissal under § 1112(b)(2) is appropriate where the debtor's failure to file an acceptable plan after a reasonable time indicates its inability to do so whether the reason for the debtor's inability to file is its poor financial condition, the structure of the claims against it, or some other reason.

*Hall*, 887 F.2d at 1044. **See Koerner v. Colonial Bank (In re Koerner)**, 800 F.2d 1358, 1368 (5th Cir.1985) (finding conversion warranted after sixteen months where proposed plan was nebulous, infeasible and inadequate); **see also Fossum v. Federal Land Bank (In re Fossum)**, 764 F.2d 520 (8th Cir.1985); **In re Ray**, 46 B.R. 424 (S.D.Ga.1984) (finding conversion warranted where debtor failed to propose confirmable plan in approximately one year); **cf. Fishell v. United States Trustee**, 19 F.3d 18, unpublished, 1994 WL 64718 at *2 (6th Cir.1994) (finding conversion warranted for failure to effectuate plan where debtors failed to propose confirmable plan in fourteen months).

This case has been pending over 14 months (since February 2006) and their proposed plan is no feasible. The court, therefore, grants FMCC's Motion to Convert this case. The court orders that this case be converted to chapter 7.[8]

In summary, the court SUSTAINS FMCC's objections to the debtors' proposed chapter 11 plan. The court finds that the debtors were unable to show by a preponderance of the evidence the feasability of their plan pursuant to 11 U.S.C. § 1129(a)(11). The court also GRANTS FMCC's motion to convert the debtors' chapter 11 case to chapter 7. The court instructs counsel for FMCC to prepare an order not inconsistent with this court's Memorandum within five (5) days of entry of the Memorandum.

***THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE FIRST PAGE.***

---

[8] The court specifically asked FMCC if the court denied confirmation if FMCC preferred dismissal or conversion. FMCC requested conversion. The court, likewise finds that conversion, rather than dismissal is in the best interest of creditors in this case.

12-U.S. Bankruptcy Court, M.D. Tenn.